All right, Mr. Holt, we'll hear from you first. Thank you, Your Honor. May it please the Court, I'm Aaron Holt and I represent the appellant in this case, Jay Thompson. Mr. Thompson has argued to this Court that insufficient evidence was presented at trial to support his conviction beyond a reasonable doubt. The main issue I want to emphasize regarding this argument is that it is undisputed that Detective Allison Nguyen, who was 28 years old at the time of trial, sent two photos of herself to Mr. Thompson, one of them to which she'd applied a filter, one of them apparently completely unaltered, and Thompson testified he believed these photos to depict a grown woman, not a minor. And indeed, it is undisputed that they did depict a grown woman in her late 20s. We also discussed a number of other factors that we believe should have given rise to reasonable doubt in the mind of a reasonable juror as to Mr. Thompson's guilt. Judge Holt, what did your client say during the interview with the agents that he believed she was under the age of 16? That is what Agent Faulkner testified to at trial, Your Honor. That's, yeah, we acknowledged that. So, if the jury believed that testimony, why isn't that one step towards sufficient evidence even though your client denied it at trial? Well, Your Honor, again, the main thing that I'm pointing out is the evidence that was introduced and not disputed by the government that there were these photos that were actually of a woman who was in her late 20s. Did the jury see the photos? Your Honor, they did. They did see those photos. So, why couldn't they use the photos in the interview to discount his denial? Well, Your Honor, obviously the jury did what it did, and the main point that really I want to emphasize in argument to this court is that Mr. Thompson has at the very least shown that the evidence was far from overwhelming, and most of the argument that I would like to present and that I anticipate the court might have questions about or might like to hear about was our alternative argument that Mr. Thompson is entitled to a new trial because of prosecutorial misconduct, and if I may go on to that point, Mr. Thompson has argued that several instances of prosecutorial misconduct prejudiced his substantial rights and rendered his trial fundamentally unfair. We've acknowledged that no objection was made at trial to any of that conduct, and therefore plain error review applies, but we submit that the misconduct at issue here so fundamentally compromised the fairness of the jury trial that relief is warranted even under that very strict standard of review as the error here seriously affects the fairness, integrity, and public reputation of judicial proceedings. The key evidentiary issue in this case was Mr. Thompson's... We seem to get a lot of these appeals about prosecutorial misconduct with no objections made. Why do you suppose that is? You're an expert on this, being an assistant federal public defender. Is it that the lawyers aren't familiar with what misconduct is until they go back later and read the record or things you should be objecting to in final argument, or are people afraid to object in final argument? I know it's not really part of the law of the case or anything, but I'm just wondering why it always comes up in this posture. Your Honor, I can't speak directly to that in this particular case. I think that part of it may have to do with a reluctance to object during closing arguments. I think that may be part of it. I did not represent Mr. Thompson below. I looked at the record, and I'm the appellate attorney on this one, so I don't know exactly what the thinking was. All right. Well, go ahead and tell us why you think there was error. Sure. Again, the key evidentiary issue was Mr. Thompson's state of mind, what he thought about the age of the person he was communicating with. He said he thought he was communicating with a grown woman. Agent Faulkner said, no, he confessed to us that he thought she was under 16. So the credibility of these two key witnesses was critical to the case, and the prosecutorial misconduct that we've complained of on appeal was aimed at damaging Mr. Thompson's credibility and at improperly bolstering Agent Faulkner's. So it went to that key issue, and I think one of the most important cases to look at here is this court's decision in the United States v. Miller from 2010. This court held that even a single misstep on the part of the prosecutor may be so destructive of the right to a fair trial that reversal is mandated. In that case, the court identified two such missteps that warranted reversal for a new trial. The first one was that the prosecutor insinuated that to find the defendant innocent, the jury must believe that Officer Smith, in that case, was being dishonest. And the second one was that the prosecutor stated that an acquittal required the jury to find that Officer Smith would jeopardize his future career as a police officer. Those exact same missteps occurred in the instant case, only I would argue in a somewhat more prejudicial manner, plus three additional missteps. The prosecutor improperly asked Mr. Thompson if Agent Faulkner was lying, so compelled him to accuse a government agent of lying on the stand. The prosecutor asked Mr. Thompson on a couple of occasions if there was a government conspiracy against him, and got him to say that, yes, I don't really know, it seems like there was, it feels like a witch hunt to me, that's what he ended up testifying to. And then the government also improperly appealed to the passion, prejudice, and sympathy of the jury by going even further and suggesting that if it were to vote to acquit Mr. Thompson, Agent Faulkner would lose his job and be prosecuted, and his family would be harmed. So all of these incidents occurred on the second day of a two-day trial, the same day the jury deliberated and found Mr. Thompson guilty of the offense charged. Each of these errors tended to compound and amplify the others, they're all somewhat related to each other. The things were referenced in closing that had been improperly elicited during the testimony phase of the trial, and I believe the most prejudicial argument occurred in closing and rebuttal closing, right before the jury was sent to deliberate. The government has attempted to defend all of the prosecutor's conduct as conduct here is appropriate, and hasn't conceded to my recollection that any of its questioning or However, the government has failed to really cite any authority that affirmatively indicates that its challenge conduct was proper. A closer look at its brief suggests that the general thrust of its argument on appeal is really that any misconduct that occurred was harmless in light of the evidence presented at trial. As I mentioned, I know you cite Miller, but why is it improper to argue that false testimony by an officer, for example, could have a deleterious impact on his career? Why isn't that comparable to arguing that a cooperating defendant could face revocation of his plea agreement if he testifies falsely? Isn't the government allowed to counter allegations of bias with information about incentives the witness might have to be truthful? Your Honor, the cases that I've seen and that we cited on this do indicate that the government is entitled to make a fair response and rebuttal, but again, all the cases that we're pointing to tend to say that this is going too far. This is simply something that's going too far. The government is allowed to question and to make argument as to the lack of a motive to lie, but this is going even further than that by arguing that there is this massive disincentive to lie. I think one reason that it's... My question is why, even if the cases say that, why is that correct? Well, Your Honor, because what it is doing is improperly vouching or bolstering because it is implying a guarantee of truthfulness. It's trying to get the jury to think there's no way this person would lie because these consequences would follow without any actual evidence as to how likely those consequences are to follow, and I think very importantly, without acknowledging that a government witness, just like any other witness, can be mistaken about something and can have a faulty recollection about something. This is kind of presenting to the jury that it's just promoting the government witness as somebody that's sort of above that sort of thing. It's taking the impremature of the government and endowing the witness with it in a way that's improper, and again, there are multiple cases that say that, including this court's prior precedent. And again, I believe that really the most harmful section of argument was in the rebuttal closing right before this went to the jury when the government communicated to the members of the jury that the only way they could equip Mr. Thompson was to find that Agent Faulkner was lying and that there was a government conspiracy against him, and the government literally said that. The prosecutor literally said that twice. You have to find, in order to acquit him, you have to find that Agent Faulkner was lying, you have to find there was a government conspiracy. They said that twice, and I just said it twice. I apologize. And again, it's simply not true. That's simply not true. While there may have been a direct conflict between their testimony, there was still the So the government being allowed to present that to the jury, to make the jury think that you have to find that this government agent was lying in order to acquit and not allowing for the possibility that he could have been mistaken, I think that was very, very prejudicial. And again, even more than that, the prosecutor here drew the professional, personal, and legal repercussions into it. And so effectively, the argument was that if you do go to acquit, that means you think he was lying. That means he loses his job, he's prosecuted, and his family is harmed. That's just putting something in the jury's mind that doesn't need to be in the jury's mind going into deliberations, when what needs to be there is, did the government prove its case beyond a reasonable doubt? Did they prove that, you know, Mr. Thompson's state of mind beyond a reasonable doubt in this case? Counsel, how did defense counsel respond? I realize you were just discussing something in rebuttal argument right before the case goes to the jury. But as far as the earlier comments, how did defense counsel respond at all to the suggestions that, you know, being generous to your argument here that police officers won't lie because they have too much to lose, and that you had to conclude that this officer, respectable officer was lying. Was that addressed at all in defense counsel's closing? It was, and Judge Cobas, what the defense attorney argued in closing was that there were some things that he believed, you know, weighed on the credibility of the investigation as a whole, but also he very clearly argued, look, this could have been a mistake. This was a two to three minute interview that happened five months ago, where Agent Faulkner was not the one conducting the interview. He was filling out a consent to search form while Officer Sears was conducting the interview. He pointed out that, look, it could have been mistaken. You know, he could have just been mistaken, and then the government came back in rebuttal closing and said, no, he couldn't have been mistaken. You know, that's not what's at issue. You have to find that he was lying. You have to find he was lying and there was a government conspiracy or you can't acquit Mr. Thompson. So, if that answers your question, if there are no further questions, I would like to reserve the rest of my time for rebuttal. Well, to follow up on that, did defense counsel insinuate that Faulkner was lying and that's why there should be an acquittal because he was conveniently remembering things that I think it's fair to say that there was some insinuation that he might have been lying. Yes, I think that's fair. Again, I think that defense counsel was posing different alternatives to the jury. Look, he might be lying, but also he could have just been mistaken. You think, okay, you think both were presented. Okay. Thank you for your argument. You may reserve the balance. Thank you. Mr. Roberts, we'll hear from you. Thank you, Your Honor. May it please the court, I am Dustin Roberts. I'm a AUSA from the Western District of Arkansas. With respect to the three issues presented today, unlike Mr. Holt, the government maintains that there was not only sufficient evidence presented at trial, but there was overwhelming evidence and not just in consideration of his statement made to law enforcement. In this case, there was a web-based conversation, very typical of most online enticement of a minor cases. This included that the minor was sexually inexperienced, that it included the sexual acts, specific sexual acts that Mr. Thompson wanted to perform on the minor, included that they set up a meeting to engage in those sexual acts, and then following up on that plan, Mr. Thompson was arrested when he showed up at the meeting. Separate and apart from that is the statement to law enforcement, but even looking at the fact that he showed up alone is not only significant or sufficient, it's overwhelming evidence. With respect to the prosecutorial misconduct, Mr. Thompson just fails to show his burden or meet his burden under plain error review, given specifically the overwhelming level of evidence, even excluding, if you will, the so-called tainted testimony or tainted interview. Counsel, you're not conceding that there was misconduct, am I right in my recollection? That is correct, your honor, and I'm glad to answer that. The reason why the government is not conceding that there is improper questioning or argument in this case is because I saw no black letter law cited by Mr. Thompson that would indicate that just saying lying, regardless of the circumstance, or just arguing like it was argued, regardless of the circumstance, is improper. Instead, my understanding of the case law, it's more of a totality of the trial approach, as some of the questions presented to Mr. Holmes. How would the defendant ever be in a position to judge whether the witness for the prosecution was lying? Because that requires a state of mind. Well, your honor, I mean, if the question is how would a defendant ever broach the topic that they're lying, that's not the question. That's not the question. Not how would a defendant broach the topic. The question is, if the prosecutor's question to the defendant is, isn't the witness for the prosecution lying, how is that ever a proper question? Because it requires knowledge of the state of mind of the witness for the prosecution. I understand the question now, your honor, and what I would say to that is it depends on the direct examination that preceded the cross-examination question. In this specific case, the government's point is that the defendant testified not just to that conflicted with the agent, meaning that the agent admitted that the minor was under 16, the one he intended to meet, whereas Mr. Thompson maintained he said adult woman. There was more here. One, Mr. Thompson testified that this interview was, in fact, recorded. That is problematic in that the agent testified that there was no recording in this case due to the batteries failing on the recording device. That implies right there that his credibility is in question, but he goes far beyond that, and this is kind of the most striking thing, I think, in this case. The one that stands out separate and apart from a lot of the cases Mr. Thompson cites is that he stated to the effect, something to the effect of, well, I asked for an attorney and Agent Faulkner then started asking me questions if I would consent. He specifically said that that was not his understanding what's supposed to happen when he asked for an attorney, so now it becomes more of an ethical and legal question of what Mr. or Special Agent Faulkner was doing. You can't get Special Agent Faulkner to simply testify that that's not what happened without asking the defendant to comment on whether or not the agent's lying. The jury can make their decision after hearing all the evidence. That is correct, Your Honor. In reflection, we would probably have done something like that to avoid this entire issue, but the fact... You can always ask whether the witness for the prosecution is accurately conveying the facts without asking whether it's a lie, but your people wanted to get lying into the dialogue. Well, prior to the lie question, the prosecutor, the AUSA, did confirm that Mr. Thompson understood the testimony before. She went over the testimony saying, you did hear Agent Faulkner say this. Again, the government's position is the reason why we're not conceding it, although I will  The clear part for the government is that Mr. Thompson cannot satisfy his burden in the prejudicial analysis by showing that there was not otherwise substantial evidence and that there was no curative instruction. Why don't you concede that which you can't defend, that it was improper argument? The only way you go home with a victory is that the evidence is overwhelming. Why shouldn't we apply the classic statement in Berger v. United States, striking foul bulls is not permitted? Why shouldn't we try to keep the Western District of Arkansas... You are in the Western District, aren't you? I am, yes, sir. Why shouldn't we try to maintain the integrity of the prosecutorial function in the Western District of Arkansas rather than approving that which I think in your heart... I'm not going to ask what's in your heart of hearts, but... Would you yourself make an argument like this in front of the jury? No. Maybe you would. Maybe we shouldn't even ask that question, but... Sir, the reason why we're not conceding, just under the totality of this case, did not see... Because you're under orders, never concede. Ever concede if you can possibly avoid doing so. Well, your honor, I believe there is a legitimate governmental concern or a legitimate concern just as a party that Mr. Thompson's burden is to show all levels of prosecutorial misconduct, and it's just not clear to the government that, based on the case law, that without a very detailed look at the entire case, can you determine if a statement is improper? And that's my point on appeal. But to be very clear... Not only are you not conceding, but you're arguing that what was done by the prosecutor was proper. Well, your honor, I am given reasons why the actual cross-examination came down and happened. Now, Judge Colleton asked Mr. Holt during his time for the reason why this court gets so many prosecutorial misconduct claims without objection. In this case, I would suggest to the court that it was because it would further highlight the implausible testimony of the defendant, of Mr. Thompson. There's a reason why you don't object in court, because sometimes it just makes things worse. In this case, I think we had so much overwhelming evidence. Looking at the online conversation alone, an officer puts on, as kind of stereotypical, or typical, rather, in online enticement case, an ad in Craigslist, in this case, stating that they're looking for new friends, mature for my age, sick of drama. Mr. Thompson responds saying, hi, are you still looking? The undercover says, yes, my name's Skye. I'm 13 years old. Hope that's okay. Mr. Thompson inquires, what kind of friend are you looking for? The UC says, any? And then they proceed to, or Mr. Thompson proceeds to ask for pictures of the undercover, the purported 13-year-old minor. Now, to address Mr. Holt's argument about the 28-year-old female, now one of the pictures involved a filter in which they kind of mask the undercover officer with bunny ears and a she stated in a trial, was common for minors to use. But yeah, she was actually 28 years of age when she sent that. That was brought out in trial, was argued to the jury, and those specific pictures were provided to the jury. Now, Mr. Thompson responded to this bunny picture by saying that she was beautiful. The undercover asked, are you okay with me being younger? Kind of the hallmarks of an under online investigation involving the enticement of a minor. Mr. Thompson asked, what are you looking for? Do you party? Are you a cop? He references drugs and alcohol, to which the undercover responds, I'm homeschooled. Now, ultimately, the undercover said that they were good with weed, their words, and law enforcement calls a proof of life picture. Proof of life picture, basically three fingers being held up to show that you're a real person. At this point, it transitions from email to text message. Now, this brings us to one of the big points Mr. Thompson makes with regard to sufficiency of the evidence, is that the fact that the conversation occurs in two phases, they claim is highly relevant. Because the minor identifies herself as 13 in the email portion, but not again during the text message portion. This, again, was argued to the jury, kind of runs afoul of the standard in sufficiency of the evidence, looking at everything in light most favorable to the verdict. The argument, just for credibility or just for validity sakes, is that Mr. Thompson was 13, asked for a picture, and when they moved to send him a picture, he just either forgot, mistook, got confused, or simply didn't care that he was chatting with a 13-year-old prior to that. That is a hard position to be in when you're in front of a jury, obviously. The U.S. v. Pearson case, evidence supporting guilt, need not preclude every other outcome other than guilt. But this kind of review of the facts of the evidence, Your Honor, it goes to the prosecutorial misconduct claims also, because one of the gauges for prejudice, one of the factors, is the strength of the government's case outside this alleged, tainted, in this case, interview. The conversation that occurred via email included, what do you do for fun? Mr. Thompson brings up sexual activity, inquires about the minor sexual experience, which he overall responds is limited. Mr. Thompson brags about his sexual abilities. He asked for sexually explicit photos and or getting undressed via FaceTime. Then, after he, that is, you know, the undercover says no, they start talking about meeting up for purposes of engaging in sex the next day. The undercover agrees that they will talk the next day. The following day, the chats resume. They discuss oral sex, they discuss the fact that the foreign and minor was a virgin. Mr. Thompson offers to change that fact. He discussed child, not child pornography, but pornography. And again, he asks, makes a statement that he would not be disappointed unless she is a cop or something, one of the hallmarks of online enticement type cases. Mr. Thompson's argument with respect to the 20-year-old, 28-year-old female, um, it was just presented to the jury. The defense has offered certain reasons or facts, but the jury is not required to believe them. This holds true with the argument that he believed she was an adult because she said she was okay with marijuana and alcohol. Quoting directly from his, uh, from the transcript, uh, a question was presented. Why didn't you think it was a minor when she said it was, when she said she was homeschooled? He replied because she replied that she was 4'20 friendly and okay with alcohol. Prosecutor responds, so what? And Mr. Thompson replied, well, that's adult. An adult, a minor cannot purchase alcohol on their own. Your Honor, the, the statements that Mr. Thompson provided in court were just not credible and they certainly don't satisfy his burden of showing insufficient evidence and they certainly don't reflect that there was, um, kind of a fair credibility analysis going on between Agent Faulkner and the defendant. Um, Your Honor, I see that I've spent most of my time reviewing the facts, but some of the, um, some of the more outlandish statements that I want to make sure the court is aware of, um, the defendant testified that he didn't need to ask the undercover the rapist because he was convinced of the picture alone. Uh, he stated at one point that, uh, when he was interviewed, he responded who, uh, with regard to who he was meeting, he said the adult woman without prompt. Um, he, my favorite one is that the minors can't buy alcohol. Uh, also the prostitute, uh, question, there's just, there's nothing in the chat to support that. So overall, Your Honor, the government's point is that based on the strength of the government's case, the first two issues, um, Thompson cannot satisfy. And finally, uh, I didn't get to it, but Thompson fails for, uh, meet his burden in showing the court abused his discretion with regard to the motion to compel. Thank you, Your Honor. All right. Thank you for your argument. Mr. Holt, we'll hear from you in rebuttal. Thank you, Your Honor. Um, I just, I'll probably address most of my time here. I don't have much, but to the fact that the evidence here was not as overwhelming as the government wishes that it had been, there was no recording of the interview that was conducted there. So there's no smoking gun there regarding his purported confession. The task force officer who conducted the interview did not testify at trial. Um, agent Faulkner only testified to what Thompson had said during the interview after reviewing the report made by this other agent, by agent Sears. Um, there, there were plenty of, of, of things that, that Mr. Thompson testified to that, that indicated that, that he, uh, did not, did not necessarily believe that he was talking to a minor. Uh, she, she referred on about three different occasions to wanting to make him happy. Now, Mr. Thompson had been around the block a time or two and he had had experience with prostitutes and he testified, I think very plausibly and very credibly that that's the kind of thing that you, that he would hear from prostitutes. Um, you know, even the fact that he asked if she was a cop meant he was thinking about the fact that she might've been an adult who was involved in a prostitution sting. Uh, I don't think that, that is nearly as farfetched as the government wants to make it out to be. And then also I want to direct the court's attention to the, the, I apologize for any mispronunciation of this, but the Cheesy Olka case, which is, uh, was, was, uh, referenced in, uh, our sufficiency of the, sufficiency of the evidence argument. Uh, the, the, the court there, uh, said that one strains to understand why a police officer in a sting operation of this sort would send such a picture, a picture of an adult woman in her late twenties, which at best would serve to inject confusion, uncertainty, and suspicion as to the victim's age. In fact, it could surely have led Cheesy Olka to believe that Ashley was an adult pretending to be younger than she was. The unusual circumstances may even have led to a defendant to suspect she was a police officer. So that right there shows that the fact that there were photos of a 28-year-old woman showed that the evidence was not conclusive, uh, and I see my time's expired. So we would just ask the, the, the court to exercise its discretion to, uh, reverse and remand this for, for, to vacate the conviction, reverse and remand for, for a new trial. All right. Thank you for your argument. Thank you to both counsel. The case is submitted. The court will file an opinion in due course.